IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KRISTEN L. SIVERTSON, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:11-CV-0836-D |
| VS. § | |
| § | |
| HILLARY RODHAM CLINTON, § | |
| in her Official Capacity as § | |
| Secretary of State, § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

Defendant moves to dismiss this action under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted or, alternatively, to transfer the case to the Southern District of Texas under 28 U.S.C. § 1404(a). For the reasons that follow, the court denies the motion.

I

This is an action by plaintiff Kristen L. Sivertson ("Sivertson") alleging sex and pregnancy discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, against defendant Hillary Rodham Clinton ("the Secretary"), in her official capacity as Secretary of the U.S. Department of State ("State Department"). Sivertson asserts that she was subjected to an ongoing hostile environment and treated less favorably

due to pregnancy.¹  In particular, she alleges that was not selected for a GS-14 Supervisor position in the Foreign Service.  Sivertson is currently employed by the State Department in the Foreign Service Bureau.  She lives in Cypress, Texas and works in the Houston Field Office; both of which are located in the Southern District of Texas.  Paul Vallee ("Vallee") and Marion Cotter ("Cotter"), the alleged principal actors, were supervisors in the Houston Field Office.²

Sivertson filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on sex and pregnancy.  The EEOC administrative judge issued an order of dismissal on December 3, 2010, and the State Department implemented the administrative judge's decision by issuing a final order on January 11, 2011.  On January 14, 2011 a notice of final action letter that contained the final order, a notice of appeal rights, and a copy of the EEOC appeal form was sent to Sivertson's counsel, Cary Schulman, Esquire.  Cynthia Metcalf ("Metcalf"), a paralegal whom Schulman employed, signed for the letter on January 17, 2011.³  According to Schulman, Metcalf never delivered

---

¹In deciding the Secretary's Rule 12(b)(6) motion to dismiss, the court construes Sivertson's complaint in the light most favorable to her, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in her favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

²In her response, Sivertson asserts that Vallee and Cotter no longer work in the Houston Field Office; instead, Vallee is now stationed either in Washington, D.C. or Pakistan, and Cotter is stationed in Ukraine.

³The court recounts the dates when Sivertson and her counsel allegedly received the right-to-sue letter in order to understand the basis for the Secretary's motion to dismiss.  But as the court explains below, Sivertson does not include these dates in her complaint, and the court cannot take them into account in deciding the Secretary's Rule 12(b)(6) motion.

the letter to him; the Secretary's motion to dismiss was the first indication of this mailing. Schulman maintains that he is still unable to find this letter, that he believes Metcalf destroyed, took away, or discarded the letter without notifying anyone, and that Metcalf was terminated for other alleged acts of serious misconduct while employed at his firm.

A copy of the right-to-sue letter was also sent to Sivertson on January 20, 2011. Sivertson filed her complaint on April 21, 2011. Assuming that Sivertson received her copy of the letter on or sometime after January 21, Sivertson filed her complaint 94 days after Schulman's office signed for the letter and 90 days after Sivertson received her copy.

II

The court considers first the Secretary's motion to dismiss.

A

The Secretary contends that Sivertson's complaint fails to state a claim on which relief can be granted because it was filed after the 90-day limitations period and is therefore untimely. The Secretary asserts that the 90-day period began on January 17, the date Schulman's office received the right-to-sue letter. Sivertson filed the complaint 94 days later.

Sivertson responds that the 90-day period did not begin until or sometime after January 21, the date Sivertson received her copy of the right-to-sue letter. Sivertson maintains that the delivery to Schulman on January 17 was ineffective because, through no fault of either Schulman or Sivertson, Schulman did not receive it. Alternatively, Sivertson contends that the doctrine of equitable tolling applies.

B

"Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). "In the usual case, this court is unable to grant dismissal under Rule 12(b)(6) based on an affirmative defense because it rarely appears on the face of the complaint." *Simon v. Telsco Indus. Emp. Benefit Plan*, 2002 WL 628656, at *1 (N.D. Tex. Apr. 17, 2002) (Fitzwater, J.). Furthermore, "[i]t is well settled . . . that in order for a defendant to prevail on the basis of limitations at the pleadings stage, the plaintiff must normally plead [herself] out of court." *W. Fork Partners, L.P. v. Chesapeake Exploration, L.L.C.*, 2009 WL 2252505, at *5 (N.D. Tex. July 29, 2009) (Fitzwater, C.J.) (quoting *Funches v. City of Dallas*, 1999 WL 261842, at *2 (N.D. Tex. Apr. 28, 1999) (Fitzwater, J.)); *accord Covington v. Mitsubishi Motor Mfg. of Am., Inc.*, 154 Fed. Appx. 523, 524-25 (7th Cir. 2005) ("[D]ismissal under Rule 12(b)(6) on the basis of an affirmative defense is appropriate only where the plaintiff pleads himself out of court by 'admit[ting] all the ingredients of an impenetrable defense.'") (citing *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004)); *Barasich v. Shell Pipeline Co.*, 2006 WL 3913403, at *2 (E.D. La. Nov. 20, 2006).

Title VII claimants have 90 days to file a civil action after receipt of a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e-5(f); *Taylor v. Books a Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002) (citing *Nilsen v. City of Moss Point, Miss.*, 674 F.2d 379, 381 (5th

Cir. 1982)).  This requirement is strictly construed.  *Taylor*, 296 F.3d at 379; *Stokes v. Dolgencorp, Inc.*, 367 Fed. Appx. 545, 547 (5th Cir. 2010) (per curiam) (citing 42 U.S.C. § 2000e-5(f)).  The 90-day limitations period "is not a jurisdictional prerequisite, but more akin to a statute of limitations."  *Espinoza v. Mo. Pac. R.R. Co.*, 754 F.2d 1247, 1248 n.1, 1250 (5th Cir. 1985).  The court therefore treats the timeliness *vel non* of Sivertson's Title VII claim as an affirmative defense.  *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412-13 (5th Cir. 2003) (characterizing as affirmative defense assertion that Americans with Disabilities claim was untimely); *Goubert v. Terrebonne Parish Consol. Gov't*, 2006 WL 2425345, at *2 (E.D. La. Aug. 21, 2006) (holding that "[a] statute of limitations defense is an affirmative defense" and applying this standard to defense that Title VII claim was untimely).

C

Because the Secretary is moving to dismiss Sivertson's complaint based on the 90-day period of limitations—an affirmative defense—she is not entitled to dismissal under Rule 12(b)(6) unless Sivertson has pleaded herself out of court by admitting to all of the elements of the defense.  *See, e.g., W. Fork Partners*, 2009 WL 2252505, at *5 (quoting *Funches*, 1999 WL 261842, at *2); *Covington*, 154 Fed. Appx. at 524-25.  Sivertson's complaint does

not address when she or her counsel received the right-to-sue letter.[4]  Because all of the elements of the 90-day limitations defense have not been met on the face of the pleadings, the Secretary is not entitled to dismissal under Rule 12(b)(6) on the basis that the action is untimely.

III

The court turns next to the Secretary's alternative motion to transfer the case to the Southern District of Texas under § 1404(a).

A

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "The decision to transfer is made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808, 811 (N.D. Tex. 2002) (Fitzwater, J.).  The court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other.

---

[4]As noted, the Secretary's motion to dismiss—not Sivertson's complaint—provides the dates regarding when Sivertson and her counsel allegedly received the right-to-sue letter. If the court were to rely on documents outside of the complaint, such as the evidence of the mailing dates included in the Secretary's motion to dismiss, the court would be required to convert the motion to dismiss into a motion for summary judgment. *See* Rule 12(d); *Stokes*, 367 Fed. Appx. at 547 (reviewing motion to dismiss under Rule 12(b)(6) for untimeliness under summary judgment principles because district court, in granting motion, relied on documents outside complaint).  The court declines to convert the Secretary's motion to dismiss into a summary judgment motion.

*Fowler v. Broussard*, 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.) (citing *Enserch Int'l Exploration, Inc. v. Attock Oil Co.*, 656 F. Supp. 1162, 1167 n.15 (N.D. Tex. 1987) (Fitzwater, J.)). Moreover,

> [t]he plaintiff's choice of venue is . . . entitled to deference, and therefore the party seeking transfer has the burden to show good cause for the transfer. The burden on the movant is "significant," and for a transfer to be granted, the transferee venue must be "clearly more convenient than the venue chosen by the plaintiff."

*AT & T Intellectual Prop. I, L.P. v. Airbiquity Inc.*, 2009 WL 774350, at *1 (N.D. Tex. Mar. 24, 2009) (Lynn, J.) (footnotes omitted) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (*"Volkswagen II"*)). The weight to be accorded the plaintiff's choice of forum is diminished, however, where she brings suit outside her home forum. *Santellano v. City of Goldthwaite*, 2011 WL 1429080, at *2 (N.D. Tex. Apr. 14, 2011) (Fitzwater, C.J.) (citing *Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.*, 685 F. Supp. 346, 349 (S.D.N.Y. 1988)).

The court must decide as a preliminary question "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) (*"Volkswagen I"*); *Volkswagen II*, 545 F.3d at 312 ("The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue."). Once the court resolves this issue, the court must in deciding whether to transfer the case evaluate "a number of private and public interest factors, none of which are given dispositive weight." *Volkswagen I*, 371

F.3d at 203 (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)).

> The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law.

*Id.* (citations omitted; bracketed material added). "Although [these] factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *Volkswagen II*, 545 F.3d at 315. The Secretary must establish "good cause" for transferring the case, meaning that, "in order to support [her] claim for a transfer, [she] must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Volkswagen II*, 545 F.3d at 315 (brackets in original) (quoting § 1404(a)).

B

The court addresses first "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," *Volkswagen I*, 371 F.3d at 203, and holds that Sivertson could have brought this lawsuit in the Southern District of Texas. Venue in a Title VII case is governed by 42 U.S.C. § 2000e-5(f)(3), which provides, in relevant part, that venue is proper in "any judicial district in the State in which the

unlawful employment practice is alleged to have been committed." It is undisputed that the Southern District of Texas is a proper venue because the alleged discriminatory behavior by Vallee and Cotter against Sivertson occurred in Houston, which is located within the Southern District of Texas.

C

The court evaluates next the weight to be accorded Sivertson's choice of forum. A plaintiff's choice is normally entitled to deference, but when she files suit outside her home forum, the weight accorded to the choice is diminished. *See, e.g., Santellano*, 2011 WL 1429080, at *2 (citing *Alexander & Alexander*, 685 F. Supp. at 349). Sivertson's choice of the Northern District of Texas is not entitled to significant weight because she filed suit outside of her home forum: the Southern District of Texas.

D

The court next considers the private interest factors.

1

The first private interest factor concerns the relative ease of access to sources of proof. "The Fifth Circuit [has] held that despite technological advances that [have] made the physical location of documents less significant, the location of sources of proof remains a meaningful factor in the transfer analysis." *AT&T*, 2009 WL 774350, at *2; *see Volkswagen II*, 545 F.3d at 316 ("[T]he sources of proof requirement is a meaningful factor in the analysis.").

The Secretary posits generally that "all of the documents and physical evidence

- 9 -

relating to the claim are located in Houston," and there is "no known source of proof" located in the Northern District of Texas. D. Br. 7-8. Sivertson responds that the human resource records are maintained in Washington, D.C., not at the Houston Field Office.

The court finds this factor to be neutral. The Secretary has failed to "identify any specific proof, or even categories of proof" located in Houston. *See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 2009 WL 2634860, at *4 (N.D. Tex. Aug. 26, 2009) (Fitzwater, C.J.). The Secretary merely asserts that "all of the documents and physical evidence" are in Houston. D. Br. 7. Even assuming that this assertion is true, it is insufficient to satisfy the Secretary's burden concerning the first factor. Moreover, the Secretary does not respond to Sivertson's contention that at least one type of evidence, human resource records, is located in Washington, D.C. The court therefore cannot determine whether the burden of transporting the relevant human resource records to Dallas is greater than transporting them to Houston.

2

The second private interest factor examines the availability of compulsory process over witnesses. Because the Secretary has not identified any witnesses for whom compulsory process will be needed, the court finds that this factor is neutral. *See, e.g., Kimberly-Clark Worldwide*, 2009 WL 2634860, at *5 (finding second factor was neutral because defendant failed to identify witnesses for whom compulsory process would be needed).

3

The third private interest factor concerns the difficulty and cost for willing witnesses to attend court proceedings. The availability and convenience of witnesses is the most significant factor in deciding a § 1404(a) motion to transfer. *See Sw. Airlines Co. Profit Sharing 401(k) Comm. v. UBS Global Asset Mgmt. (Ams.), Inc.*, 2007 WL 268808, at *3 (N.D. Tex. Jan. 29, 2007) (Fitzwater, J.).

The Secretary posits generally that "all the key witnesses" live in the Southern District of Texas, and that there are "no known witnesses" from the Northern District of Texas. D. Br. 8. As for the unidentified witnesses living in the Southern District of Texas, the Secretary asserts it will be costly for those witnesses to travel over 240 miles from Houston to Dallas.

Sivertson responds by specifically identifying four witnesses who reside in the Northern District of Texas: Richard Higbie ("Higbie"), Terri Chube, Ed McGrath, and Laviris Stubblefield. She maintains that one of these witnesses, Higbie, intends to file a lawsuit in this court based on the actions of Vallee and Cotter, and she contends that it will be necessary to join both cases because they share pertinent evidence. Sivertson also posits that the principal actors, Vallee and Cotter, no longer live in Houston; instead, Vallee is stationed either in Washington, D.C. or Pakistan, and Cotter is currently stationed in Ukraine. For the remaining witnesses in the Southern District, Sivertson contends that depositions and testimony may be effectively and easily obtained by video conferencing between the Houston and Dallas Field Offices.

The court finds this factor to be neutral. "[T]he party seeking the transfer must specify clearly . . . the key witnesses to be called and their location and must make a general statement of what their testimony will cover." 15 Charles A. Wright, et al., *Federal Practice and Procedure* § 3851, at 221-22 (3d ed. 2007); *see Magana v. Toyota Motor Corp.*, 2010 WL 5108850, at *2 (N.D. Tex. Dec. 6, 2010) (Boyle, J.) (finding that defendant failed to show good cause for transfer based on this factor because it did not provide name, address, or proposed testimony of any witness who could more conveniently testify in the proposed transferee district). The Secretary has not satisfied her burden because she has neither identified any key witnesses who live in the Southern District of Texas nor provided a general statement regarding their testimony. It is insufficient to make the conclusory assertion that "all of the key witnesses . . . are located in Houston." D. Br. 8.

Moreover, this factor "primarily concerns the convenience of nonparty witnesses." *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, 2011 WL 1103372, at *4 (N.D. Tex. Mar. 25, 2011) (Fitzwater, C.J.) (declining to consider parties' employees under the third factor). Even assuming that the Secretary was referring to Valle and Cotter, the only persons whom Sivertson mentions specifically in her complaint, both are employees of the Secretary, so their convenience should not be considered.

Although Sivertson's response specifically lists four witnesses who reside in this district, the court nevertheless finds this factor to be neutral because it is unclear whether these witnesses are relevant to Sivertson's case. Sivertson only provides what the court assumes to be the job titles for three witnesses, and she states generally that they "witnessed

discriminatory behavior engaged in by Cotter/Vallee." P. Br. 8.[5] This leaves unanswered the question whether they witnessed allegedly discriminatory behavior directed against Sivertson or against Higbie. The witnesses are only important under this factor if they contribute at least somewhat to Sivertson's case and not solely to Higbie's.[6] Sivertson does not mention these witnesses in her complaint, although she refers to them briefly in opposing the Secretary's motion to transfer. And because Sivertson worked in the Houston Field Office, it is less likely that these individuals from the Northern District of Texas witnessed the alleged discriminatory acts taken against her. Accordingly, the court declines to attribute weight to Sivertson's specified witnesses.

4

The fourth private interest factor examines the practical problems that make trial easy, expeditious, and inexpensive. The court finds that this factor is neutral because neither party

---

[5]Sivertson states in her response: "Higbie resides in the Northern District and several witnesses who witnessed discriminatory behavior engaged in by Cotter/Vallee live in the Northern District. (Terri Chube (Analyst), Ed McGrath (Former RAC), Laviris Stubblefield (Former RAC)). Richard Higbie, also represented by the lawyers for Sivertson." P. Br. 8. Although Sivertson does not elaborate in the abbreviation "RAC," the court assumes that it is an abbreviation for a job title.

[6]As of the filing of this memorandum opinion and order, it does not appear that Higbie has filed a lawsuit in this court, and he has not sought leave to join this lawsuit as a plaintiff. Had Higbie been joined as a party, the court would consider his convenience and the convenience of his witnesses in assessing the motion to transfer. *See Volkswagen I*, 371 F.3d at 204 (holding that, in considering motion to transfer, court should consider convenience of third-party defendants because term "parties" in § 1404(a) "contemplate consideration of the parties . . . in all claims and controversies properly joined in a proceeding."). Because Higbie is not a party, however, the court will only consider his convenience as a witness in Sivertson's case.

has presented arguments or evidence that pertain to this factor. *See, e.g., Perkins v. Apria Healthcare, Inc.*, 2011 WL 903730, at *3 (N.D. Tex. Mar. 16, 2011) (Fitzwater, C.J.) (concluding the fourth factor was neutral because movant failed to provide any evidence).

E

The court now turns to the public interest factors. The only factor that impacts the court's decision is the one that considers the local interest in having localized interests decided at home, because the parties do not present arguments or evidence regarding the other public interest factors.

The Secretary argues that this factor favors transferring the case to the Southern District of Texas because all of the alleged events occurred in Houston. Additionally, Sivertson resides in the Southern District of Texas. Sivertson does not dispute either of these assertions, but she contends that the Secretary has an office in Dallas, and she refers to the lawsuit that Higbie intends to file in this district, perhaps suggesting that there is a local interest in having both lawsuits litigated here.

The court finds that this factor weighs in favor of transferring the case. The facts giving rise to this case occurred in the Southern District of Texas, and Sivertson resides in that district. Although the Secretary has an office in Dallas, the office has no connection to the facts of this litigation, and this case bears no significant relationship to the Northern District of Texas. "For these reasons, 'it would not be fair to burden jurors within this district with service in this case.'" *USPG*, 2011 WL 1103372, at *6 (alteration omitted).

F

Considering the factors holistically, *see id.* at *7, the court holds that the Secretary has failed to satisfy her burden of demonstrating that the Southern District of Texas is clearly more convenient for the parties and witnesses and in the interest of justice. Although Sivertson's selection of the Northern District of Texas is entitled only to diminished deference because she is bringing suit outside her home forum, the Secretary has established that only one factor—the public interest factor that considers the local interest in having localized interests decided at home—favors transferring the case. The remaining factors are neutral, and the Secretary has not met her significant burden of demonstrating that the Southern District of Texas is clearly more convenient than the venue Sivertson selected.

\* \* \*

For the reasons explained, the court denies the Secretary's June 30, 2011 motion to dismiss or, in the alternative, for venue transfer.

**SO ORDERED.**

September 14, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE