IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KRISTEN L. SIVERTSON,<br><br>     Plaintiff,<br><br>VS.<br><br>HILLARY RODHAM CLINTON,<br>in her Official Capacity as<br>Secretary of State,<br><br>     Defendant. | §<br>§<br>§<br>§ Civil Action No. 3:11-CV-0836-D<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

MEMORANDUM OPINION
AND ORDER

Defendant's motion for summary judgment presents the question whether the limitations period in this discrimination case should be equitably tolled on the basis that plaintiff's attorney was unaware of his receipt of a right-to-sue letter due primarily to the serious misconduct of his paralegal. Concluding that the narrow and sparingly applied exception of equitable tolling should not be invoked in the circumstances presented, the court grants defendant's motion and dismisses this case with prejudice as time-barred.

I

This is an action by plaintiff Kristen L. Sivertson ("Sivertson") alleging sex and pregnancy discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, against defendant Hillary Rodham Clinton ("the Secretary"), in her official capacity as Secretary of the U.S. Department of State ("State Department"). Sivertson asserts that she was subjected to an ongoing hostile environment and treated less

favorably due to pregnancy.[1] In particular, she alleges that she was not selected for a supervisor position in the Foreign Service.

Sivertson filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on sex and pregnancy. The EEOC administrative judge issued an order of dismissal on December 3, 2010, and the State Department implemented the administrative judge's ("ALJ's") decision by issuing a final order on January 11, 2011. On January 14, 2011 the State Department sent via Federal Express to Sivertson's counsel—Cary Schulman, Esquire ("Schulman")—a letter dated January 10, 2011 that transmitted the State Department's final order implementing the ALJ's decision, a notice of appeal rights, and a copy of the EEOC appeal form. According to Federal Express records, the package was delivered to Schulman's office on January 17, 2011 and signed for by "C. Metcalf." D. App. 3.[2] Cynthia Metcalf ("Metcalf"), a former paralegal in Schulman's office, is the only person who meets this description and so is assumed to be the

---

[1] In recounting the factual background, the court summarizes the evidence in the light most favorable to Sivertson as the summary judgment nonmovant and draws all reasonable inferences in her favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2] Although Sivertson states only that "*something* allegedly was delivered" to her lawyer's office on January 17, 2011, P. Br. [5]-[6] (emphasis added), the Secretary has produced both a copy of the right-to-sue letter and a declaration by the Chief of Intake and Resolution in the Office of Civil Rights at the State Department attesting to the fact that she mailed the right-to-sue letter. Sivertson has not introduced any contrary evidence. Therefore, based on the evidence in the summary judgment record, a reasonable trier of fact could only find that the package included the right-to-sue letter.

person who took custody of the letter. Metcalf's employment was terminated in March 2011, shortly after the discovery of misconduct involving her work at Schulman's firm. According to Schulman, he did not discover Metcalf's misconduct in this case until the Secretary filed her motion to dismiss based on the statute of limitations.

Schulman's affidavit paints a sordid picture of Metcalf and her conduct. According to Schulman, he first saw the right-to-sue letter when Sivertson received a copy from Federal Express. P. App. [1].[3] If a copy was delivered to his office, he was unaware of it, and neither he nor anyone currently working in his office has ever seen any package allegedly delivered to his office on January 17, 2011 from the State Department. *Id.* at [1]. Although the record shows that "C. Metcalf" purportedly signed for a package on January 17, 2011, it was not logged (contrary to office protocol and policy), and no documents were scanned or filed in the client file. *Id.* at [2]. Schulman avers that the only "C. Metcalf" in his office on January 17, 2011 was a paralegal (Metcalf) who has since been dismissed for misconduct that included tampering with office records. *Id.*

Later in the spring of 2011, Schulman learned that Metcalf had formerly worked at the offices of a law firm on the opposite side of a lawsuit in which he was not only counsel but a party, a fact that Metcalf had hidden from him. *Id.* Schulman discovered that Metcalf was involved with others outside the firm in what appeared to be a criminal enterprise

---

[3]The court has treated Exhibit A to Sivertson's brief (the affidavit of Schulman) as if it were the appendix required by N.D. Tex. Civ. R. 56.6(a), and it has editorially supplied in brackets the applicable appendix page number since the document is not paginated.

- 3 -

involving insurance fraud, *id.*, and that she had deliberately interfered with another case pending in this court against the State Department, *Higbie v. Clinton*, No. 3:11-CV-0836-D. *Id.* at [3]. Schulman avers that when Metcalf committed these wrongful actions, she was not acting in a capacity for him but was working for some other unauthorized person and interests. "As such, in signing for any certified mail or [F]ederal [E]xpress mail at [his] office, Metcalf was furthering, not the law firm's interest, but the interests of another under a separate illegal and unauthorized agreement." *Id.* at [3]-[4].

A copy of the January 10, 2011 letter sent to Schulman was mailed to Sivertson on January 20, 2011. Schulman was shown as the addressee and Sivertson as one of the three persons who were copied.[4] The letter was sent via overnight mail and so arrived as early as January 21, 2011. Sivertson filed this lawsuit on April 21, 2011, 94 days after Schulman's office signed for the letter addressed to him and 90 days after Sivertson received her copy of that letter.

The Secretary moves for summary judgment on the ground that Sivertson's lawsuit is time-barred.[5]

---

[4]The other two were the ALJ and a representative of the State Department.

[5]Sivertson filed her response on May 21, 2012. Because the time for the Secretary to file a reply brief has expired, the motion is ripe for decision.

II

Limitations is an affirmative defense on which the Secretary has the burden of proof.[6] To obtain summary judgment, the Secretary must establish "beyond peradventure all of the essential elements of the . . . defense." *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F.Supp. 943, 962 (N.D. Tex . 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).

By contrast, "[t]he plaintiff has the burden to provide justification for equitable tolling." *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011) (citing *Wilson v. Sec'y, Dep't of Veterans Affairs*, 65 F.3d 402, 404 (5th Cir. 1995) (per curiam)). "The burden is on the plaintiff to show a factual basis to toll the limitations period." *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 457 (5th Cir. 2011) (citing *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988)). Whether to equitably toll the statute of limitations is committed to the district court's discretion. *Id.* (reviewing application of equitable tolling by district court for abuse of discretion) (citing *Granger*, 636 F.3d at 712).

III

"Title VII claimants have 90 days to file a civil action after receipt of a right-to-sue letter from the EEOC." *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14,

---

[6]*See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003) (characterizing as affirmative defense assertion that Americans with Disabilities claim was untimely); *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (treating "timeliness *vel non* of [plaintiff's] Title VII claim as affirmative defense").

- 5 -

2011) (Fitzwater, C.J.) (citing 42 U.S.C. § 2000e–5(f); *Taylor v. Books a Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002)). "This requirement . . . is strictly construed." *Taylor*, 296 F.3d at 379. Additionally, this requirement "is not a jurisdictional prerequisite, but more akin to a statute of limitations." *Espinoza v. Mo. Pac. R.R. Co.*, 754 F.2d 1247, 1248 n.1, 1250 (5th Cir. 1985).

A notice of final action is "received" when the EEOC delivers its notice to a claimant or the claimant's attorney, whichever comes first. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92 (1990) (noting holding of Fifth Circuit); *see also Lerond v. Roy F. Weston, Inc.*, 1999 WL 33290633, at *1 (W.D. Tex. Oct. 20, 1999) (stating that in *Irwin* "[t]he Fifth Circuit held that notice to the attorney was sufficient to impute notice to the plaintiff, and this holding was affirmed by the United States Supreme Court."). "It is generally recognized that the ninety-day period begins to run 'on the date that the EEOC right-to-sue letter is delivered to the offices of formally designated counsel or to the claimant.'" *Erves v. City of Dall.*, 2004 WL 904122, at *2 (N.D. Tex. Apr. 27, 2004) (Godbey, J.) (internal quotation marks omitted) (quoting *Hunter-Reed v. City of Hous.*, 244 F.Supp.2d 733, 740 (S.D. Tex.2003)).

The summary judgment evidence shows that the State Department sent the right-to-sue letter to Schulman on January 14, 2011 and that, on January 17, 2011, Metcalf, an employee of Schulman, signed for the package that included the letter. Accordingly, unless the limitations period was equitably tolled, the 90-day period began on January 17, 2011 and expired on April 17, 2011, four days before Sivertson filed this lawsuit on April 21, 2011.

IV

Sivertson seeks to avoid the limitations bar based on equitable tolling. She argues, in part, that "[a]s victims of [Metcalf's] misconduct, a fraud deliberately perpetrated and that could not have been discovered until [the Secretary] moved to dismiss, Plaintiff and [Schulman] surely are entitled to a few days grace by way of equitable tolling." P. Br. [4]. Sivertson maintains that the limitations period only began when she herself received the right-to-sue letter (which would make her lawsuit timely) because, due to Metcalf's misconduct, Schulman never saw the package or what it might have contained.

The bright line rule is that the limitations period begins to run when the right-to-sue letter is "deliver[ed] to the *office* of formally designated counsel." *Drummond v. West*, 1995 WL 663346, *2 (E.D. La. Nov. 8, 1995) (emphasis added) (citing *Irwin*, 498 U.S. at 93). "The practical effect of a contrary rule would be to encourage factual disputes about when actual notice was received, and thereby create uncertainty in an area of the law where certainty is much to be desired." *Irwin*, 498 U.S. at 93. "'The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable.'" *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (quoting *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998)). "Equitable tolling, however, is a narrow exception. It is an equitable modification that should be 'applied sparingly.'" *Phillips*, 658 F.3d at 457 (citations omitted) (quoting *Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002)). Equitable tolling "is not [a doctrine] that trial courts have discretion to use whenever they please." *Perez v. United States*, 167 F.3d 913, 919 (5th Cir. 1999). Equitable

tolling is limited to "rare and exceptional circumstances." *Davis*, 158 F.3d at 811. The doctrine applies "principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting [her] rights." *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996).

"Generally, in the Title VII context, there are three bases for equitable tolling: (1) a pending action between parties in the wrong forum; (2) the plaintiff's unawareness of the facts supporting his claim because defendant intentionally concealed them; and (3) the EEOC's misleading the plaintiff about his rights." *Phillips*, 658 F.3d at 457 (citing *Granger*, 636 F.3d at 712). None of these grounds applies here. Neither party has mentioned a suit that was pending in an incorrect forum, and Sivertson has neither alleged nor produced any evidence that either the Secretary or the EEOC engaged in any misleading activity. All fault lies within Schulman's office.

These three grounds, however, are not exclusive, and Sivertson contends she is entitled to equitable tolling because she has vigorously pursued her rights. But even if true, she has failed to establish that "some extraordinary circumstance stood in [her] way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). To find extraordinary circumstances when the plaintiff is represented by counsel, there must generally be some external force that prevented the plaintiff from filing in a timely manner.[7] The second and third grounds enumerated in

---

[7]An exception to the requirement of an external force is found in the first ground for equitable tolling listed in *Granger*: "the pendency of a suit between the same parties in the wrong forum." *Granger*, 636 F.3d at 712. Although no external force is required, tolling occurs only when the plaintiff files an improper suit within the limitations period and

- 8 -

*Granger*, for instance, require that an external actor—the defendant or the EEOC—have prevented the plaintiff from exercising her right.  *Cf. Fleming v. Alcoa Bldg. Prods.*, 1993 WL 394815, at *1 (7th Cir. Oct. 6, 1993) (observing that, under Supreme Court precedent, the "situations in which equitable tolling has been applied . . . share the common thread of conduct by a defendant, the EEOC, or the district court).  Moreover, when the Fifth Circuit has gone beyond the three paradigmatic examples of tolling, it has done so where there has been an external impediment.  For example, in *Granger* the panel affirmed a decision to equitably toll the 300-day administrative limitations period for a Title VII claim because, *inter alia*, although plaintiffs filed their complaint with the wrong federal agency, they did so before the limitations period expired, and when they made repeated contact with that agency, they were not informed of their error but were instead told the complaints were under investigation.  *Granger*, 636 F.3d at 713.

Here, Sivertson does not rely on an external impediment to timely filing.  Although

---

therefore provides the defendant with notice—before the limitations period expires—that she is asserting a claim.  *See Elec. Workers v. Robbins & Myers, Inc.,* 429 U.S. 229, 237-38 (1976) (discussing *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424 (1965)); *see also Walter v. Ports Am.*, 2011 WL 5415176, at *6-7 (S.D. Tex. Nov. 8, 2011) (equitably tolling the limitations period where plaintiff's complaint and *in forma pauperis* application were originally timely filed but were defective).

Sivertson cites *Rowe v. Sullivan*, 967 F.2d 186 (5th Cir. 1992), in which the Fifth Circuit stated that equitable tolling might apply "where the claimant has vigorously pursued his action, but has inadvertently missed deadlines due to his or her lack of sophistication with the procedural requirements of Title VII claims."  *Id.* at 192.  *Rowe* is distinguishable, however, because it refers to non-lawyers who lack the legal sophistication to understand the relatively intricate procedural requirements of Title VII claims, not to lawyers.  *Rowe* is therefore inapposite.

the primary fault appears to lie with Metcalf, Metcalf was Schulman's employee, Schulman is Sivertson's lawyer, and the fault is internal because "parties are bound by the acts of their lawyer." *Id.* at 712 (citing *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *Wion v. Quarterman*, 567 F.3d 146, 149 (5th Cir. 2009)). This principle includes acts by the lawyer's employees. *See Harris v. Boyd Tunica, Inc.*, 628 F.3d 237 (5th Cir. 2010) (affirming denial of equitable tolling where paralegal committed clerical error that caused plaintiff to file untimely suit); *Kaura v. Pinkerton Sec. & Investigation Servs.*, 965 F. Supp. 16 (S.D. Miss. 1997) (denying equitable tolling where attorney's staff failed to follow attorney's instructions to file complaint). Although the evidence shows that Schulman was the victim of Metcalf's misconduct, it was still he who was ultimately responsible as Sivertson's lawyer for receiving the right-to-sue letter, calendaring the receipt in relation to the deadline for filing suit, and ensuring that suit was timely filed. This included supervising the work of the employees to whom he delegated his responsibilities. No external impediment prevented him from filing a timely lawsuit. As among the State Department, the EEOC, the court, and Sivertson, the misconduct that caused the loss of this lawsuit lies at the feet of Sivertson's attorney and thus Sivertson.[8]

---

[8]As noted, *see supra* § I, Schulman avers that Metcalf was not acting for him but was working for "some other unauthorized person and interests" and "in signing for any certified mail or [F]ederal [E]xpress mail . . . [she] was furthering, not the law firm's interest, but the interests of another under a separate illegal and unauthorized agreement." P. App. [4]. But because Schulman acknowledges that Metcalf was a paralegal who was working in his office on January 17, 2011, *see id.* at [2], the court holds that he is responsible for her misconduct for purposes of evaluating Sivertson's equitable tolling claim.

Moreover, even assuming that Metcalf's fraud prevented Schulman from receiving the right-to-sue letter at his office, this case is not extraordinary because Schulman was on notice that he was the addressee of the January 10, 2011 letter and that the letter was addressed to his office. Schulman acknowledges in his affidavit that he saw the right-to-sue letter when Sivertson received her copy. P. App. [1] ("I first saw Plaintiff's right-to-sue letter from the EEOC after Plaintiff received it by Federal Express."). And because the letter was addressed to his office and was dated January 10, 2011 (i.e., more than one week before the date Sivertson received the letter), this should have alerted Schulman to the possibility that his office had already received the letter. Because Schulman, as an attorney, was charged with knowledge that the limitations period would begin upon delivery of the right-to-sue letter to Sivertson's attorney if it preceded delivery to her, he was on notice that the date his office received the letter was important when calculating the deadline for filing suit. Yet Sivertson presents no evidence that Schulman made any attempt to contact the EEOC or the State Department to determine whether its records showed that his copy of the right-to-sue letter had been sent to his office, or that, at any time before the limitations period expired, Schulman questioned his staff or checked his office to see if the letter had been received. Had these actions been taken—especially contacting the EEOC or the State Department—Schulman could have avoided the limitations bar despite Metcalf's misconduct. Schulman's inaction in this respect was an internal, not external, impediment to Sivertson's timely filing suit.

Because the court concludes in its discretion that Sivertson has failed to demonstrate

- 11 -

that this is a rare and exceptional circumstance where equitable tolling applies, the court holds that her Title VII claim is time-barred. The Secretary is therefore entitled to summary judgment.

* * *

For the reasons explained, the Secretary's motion for summary judgment is granted, and this action is dismissed with prejudice by judgment filed today.

**SO ORDERED.**

September 28, 2012.

SIDNEY A. FITZWATER
CHIEF JUDGE